IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL DOCKET NO.: 3:04CR191-02

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BRIAN KEITH BURROUGH | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress Statement of Defendant; Request for Evidentiary Hearing," filed February 28, 2005. The Government filed its Response on March 14, 2005.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of designation, this Court referred the aforesaid motion to United States Magistrate Judge David Keesler for disposition. After a hearing conducted on March 18, 2005, and in an opinion filed March 23, 2005, Magistrate Judge Keesler recommended that Defendant's Motion to Suppress be <u>denied</u>.

On April 1, 2005, Defendant filed "Written Objections to Magistrate Judge's Memorandum and Recommendation Regarding Motion to Suppress." The Government did not file a Response to these objections. These objections are deemed timely and are considered herein.

## I. STANDARD OF REVIEW

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Keeler v. Pea*, 782 F. Supp. 42, 43 (D.S.C. 1992). *De novo* review is not required by the

1

statute when an objecting party makes only general or conclusory objections that do not direct the court to the specific error in the magistrate judge's recommendation. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Camby*, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly, the Court had conducted a careful review of Magistrate Judge Keesler's "Memorandum and Recommendation" as well as a *de novo* review of those issues specifically raised in Defendant's objections.

## II. FACTUAL AND PROCEDURAL BACKGROUND

While Defendant objects to statements made by Magistrate Judge Keesler in his factual findings, Defendant admits that such findings by the Magistrate Judge are a mixture of factual findings and conclusions of law. Thus, where Defendant's specific objections relate to the facts found by Magistrate Judge Keesler, the Court conducted a *de novo* review and states its findings accordingly in the "Discussion" section of this Order. Moreover, after a careful review of the record in this case, the Court adopts the factual findings of Magistrate Judge Keesler.

## III. DISCUSSION

Applying the careful standard of review to those portions of Magistrate Judge Keesler's recommendation to which Defendant did not object, the Court finds that the Magistrate Judge's findings of fact are supported by the record and his conclusions of law are consistent with current case law. The Court must now consider the specific objections raised by Defendant. As to all issues not specifically discussed below, this Court has conducted a careful review of all issues and adopts the recommendations of Magistrate Judge Keesler.

A.      **Defendant's Waiver of *Miranda* Rights**

Defendant filed his Motion to Suppress on the basis that the statements that he made while in custody on January 22, 2004 to Charlotte-Mecklenburg Police Department ("CMPD") Detective Flynn, CMPD Detective Messer, and Special Agent Booth were obtained in violation of his right to consult with a lawyer and to have a lawyer present and, therefore, such statements are inadmissible in evidence.

After conducting a suppression hearing, which provided Magistrate Judge Keesler with the opportunity to observe the demeanor of each witness and determine the weight and credibility to give their testimony, the Magistrate Judge concluded that Defendant's testimony regarding his request for an attorney was not credible and found that Defendant knowingly and intelligently waived his *Miranda* rights. (M&R p. 7).

It is clear that unless a suspect is read his *Miranda* rights prior to interrogation and knowingly and intelligently waives those rights, any statement made by that suspect is inadmissible as evidence. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The courts review the totality of the circumstances in determining whether a suspect knowingly and intelligently waived his rights. *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir.), *cert. denied*, 537 U.S. 963 (2002).

1.      **Waiver of right to counsel**

Defendant specifically objects to the Magistrate Judge's finding that Defendant did not invoke his right to counsel when he first met with Detectives Flynn and Gordon on January 22, 2004. (Def. Obj. p. 1). In support of this objection, Defendant makes three arguments. First, Defendant argues that during the hearing on Defendant's Motion to Suppress, he introduced into

evidence a business card that Detective Flynn gave to Defendant. (Def. Obj. p. 1). Defendant contends that if Detective Flynn was going to locate a federal agent and then return to interview Defendant, it was nonsensical that she would leave her business card. (*Id.*). Second, Defendant notes that during the suppression hearing, Detective Flynn used her written statement for assistance, which was prepared approximately fourteen months after the events in question. (*Id.* p. 2). Finally, Defendant argues that since he was not charged with a federal crime at the time of these events, it makes little sense that he would ask to see a federal law enforcement agent. (*Id.*).

With regard to whether Defendant invoked his right to counsel, Detective Flynn testified that Defendant never asked for an attorney prior to making incriminating statements to law enforcement. Moreover, the testimony of Detective Messer and Special Agent Booth supported Detective Flynn's version of the events that occurred during Defendant's meeting with Detectives Flynn and Gordon. Notably, prior to January 22, 2004, on approximately six or seven other occasions, Defendant was arrested, advised of his rights, and chose to speak with law enforcement authorities. Defendant testified that he signed the Waiver Form "every time." With regard to Detective Flynn's report, the Court finds that Detective Flynn created this report on February 22, 2005. Notably, in preparing this report, Detective Flynn relied on her handwritten notes and the case file. On March 4, 2005, Detective Flynn entered a final report regarding the January 22, 2004 events into the CMPD's electronic system.

In considering the totality of the circumstances, this Court finds that Defendant did not invoke his right to an attorney prior to speaking with law enforcement.

### 2. Knowing and intelligent waiver of *Miranda* rights

Defendant further objects to Magistrate Judge Keesler's finding that Defendant

knowingly and intelligently waived his *Miranda* rights. (*Id.* p. 2). In support of this objection, Defendant contends that he testified that the events surrounding the Spring Street homicide were discussed before he was presented with the "Waiver of Rights" form. (*Id.*). Defendant further argues that he was told by Detective Messer that he "needed to get on the bus" in order to have any chance in helping himself. (*Id.*). Defendant contends that the totality of the circumstances establishes that he did not knowingly and intelligently waive his *Miranda* rights. (*Id.*).

With respect to whether Defendant knowingly and intelligently waived his rights, Detective Messer testified that he advised Defendant of his rights. As an aid in that process, Detective Messer used a form titled "Adult Waiver of Rights" ("Waiver Form"). Detective Messer read the first right to Defendant - the right to remain silent. Defendant then initialed next to that right, indicating that he understood that right. Detective Messer then had Defendant read the second right. Defendant complied and again initialed next to this right. Detective Messer then read the third and fourth rights and Defendant subsequently initialed next to both of those rights. Detective Flynn and Special Agent Booth were both witnesses to these events and corroborated Detective Messer's testimony. Defendant then signed his name in the blank on the Waiver Form, above which reads, "<u>I now state that I DO wish to answer questions at this time.</u> My decision to answer questions now is made freely and is my own choice. . . ." Immediately after Defendant signed the Waiver Form, he related to Detective Flynn, Detective Messer, and Special Agent Booth information regarding the Spring Street homicide. Defendant stated something to the effect of "I'm your mother-fucking gunman" and recounted that he shot and killed Jammie Covington, the victim of the Spring Street Murder.

Upon review of the totality of the circumstances, the Court finds that Defendant

knowingly and intelligently waived his *Miranda* rights.

B.      **Defendant's Voluntary Statements**

Defendant further objects to Magistrate Judge Keesler's finding that Defendant's statements were voluntary. (Def. Obj. p. 2). In support of this objection, Defendant contends that Detective Messer's statement that Defendant "needed to get on the bus," indicated that cooperation by Defendant would be in his best interest. (*Id.* p. 3). Defendant further argues that he was interrogated for two hours before he gave any incriminating statements. (*Id.*). Defendant also states that the fact that his request for counsel was ignored, lengthy questioning by several detectives in a small room, and cajoling from one detective coerced him into making the statements. (*Id.*).

The Fifth Amendment of the Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . without due process of law." U.S. Cons. Amend. V. The courts have found that a statement is involuntary under the Fifth Amendment only if it is involuntary under the Due Process Clause. *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (citations omitted). To determine whether a statement is voluntary under the Due Process Clause a court must ask "'whether the defendant's will has been overborne or his capacity for self-determination critically impaired.'" *Id.* at 780-81 (*quoting United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)). To make the determination of whether a defendant's will was "overborne" or his "capacity for self-determination critically impaired," the court must consider the totality of the circumstances, "including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.* at 781 (internal quotations omitted).

A review of the totality of the circumstances leads this Court to conclude that Defendant's statements were made voluntarily. Detective Flynn, Detective Messer, and Special Agent Booth all testified that they never threatened or tricked Defendant and Defendant never asked for an attorney. In fact, as described above, Detective Messer was careful to make sure Defendant understood his rights. There is nothing in the record to suggest that Defendant was harmed or threatened with harm if he did not answer the questions posed by the Detectives, that he was subjected to a long period of interrogation or isolation, or that he was deceived. The Court further notes that the statement made by Detective Messer that Defendant should "get on the bus" does not rise to the level of coercion, nor does the hour and one-half to two hour interrogation. *See United States v. Elie*, 111 F.3d 1135, 1143 (4th Cir. 1997) (giving examples of circumstances where courts have found that a defendant's will was overborne). In sum, there was no basis upon which the Court could find the requisite coercive police conduct that would render Defendant's statements involuntary under the Due Process Clause.

Since Plaintiff was advised of his *Miranda* rights, knowingly and intelligently waived those rights, and made voluntary statements to Detective Flynn, Detective Messer, and Special Agent Booth, such statements are admissible. Therefore, this Court denies Defendant's Motion to Suppress.

**SO ORDERED.**

**Signed: May 16, 2005**

Graham C. Mullen
Chief United States District Judge