UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:04-cr-00191-FDW

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| BRIAN KEITH BURROUGH, | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Brian K. Burrough's ("Defendant") *pro se* Motion and Renewed Motion for Compassionate Release/Reduction of Sentence, (Doc. Nos. 267, 282), and the Government's Response in Opposition (Doc. No. 274). For the reasons set forth below, Defendant's Motions are DENIED.

**I.  Background**

On July 14, 2006, Defendant plead guilty to Conspiracy to Possess with Intent to Distribute Heroin and Cocaine Base in violation of 21 U.S.C. §§ 841 and 846 ("Count 1") and Using a Firearm During and in Relation to a Drug Trafficking Crime causing Death in violation of 18 U.S.C. §§ 924(c)(1) and 924(j)(1) and 2 ("Count 2"). (Doc. No. 143). Defendant and the Government agreed that the appropriate sentence was 30 years imprisonment. Id. In December 2008, Defendant was sentenced to 360 months in prison on each count, to be served concurrently. (Doc. No. 205). Defendant is currently imprisoned at FCI Gilmer, with an anticipated release date of July 12, 2029. (Doc. No. 274, p. 2).

1

Defendant's convictions stem largely from a conspiracy to distribute at least one kilogram of heroin and at least 50 grams of cocaine alongside four other individuals. In November 2003, Defendant showed up with a gun and began arguing with the supplier. (Doc. No. 273, p. 5). When the supplier left, hit a parked car, and waited for a tow truck, Defendant drove up and shot at the supplier and another man with him. Id. Defendant shot and killed the supplier and injured the other man. Id. Defendant admitted to investigators that he was asked to kill the supplier by his associate because the associate owed money for drugs. Id. After the murder, he drove to the victim's apartment and broke in to look for money and drugs. Id. Defendant also admitted to buying at least a half-eighth of crack cocaine on approximately seventy-four occasions between July and November 2003. Id. at 6.

On May 27, 2020, Defendant filed a request for compassionate release to the warden. The request was based on a series of medical conditions as well as a presented risk of COVID-19. (Doc. No. 274, p. 2). The warden denied this request. Id. at pp. 2-3. On September 9, 2020, Defendant submitted a motion to this Court, citing COVID-19 and the following medical conditions as "compelling and extraordinary" reasons for compassionate release: ulcerative colitis, high blood pressure, thyroid problems, heel spurs, bone disease, migraines, hernia, gum disease, and issues with the main tube to his heart. (Doc. No. 267, p. 5).

On March 8, 2022, Defendant filed a Renewed Motion for Compassionate Release and Sentence Reduction asserting that on February 28, 2022, he was informed by his brother that their father was incapacitated and in need of a caregiver. (Doc. No. 282, p. 2). He states that his father, Thomas Harold Burrough ("Defendant's father"), is seventy-eight-years-old, lives alone, has been on disability since thirty-one-years-old due to a bad disc removed from his back, and is in the early

2

stages of dementia. Id. He states that on February 22, 2022, Defendant's father had a kidney removed and can hardly walk, hear, bathe, or feed and provide for himself. Id. Defendant asserts that his brother, Darren Burrough, cannot provide for their father. Id.

Defendant also reasserts COVID-19 and his health conditions as grounds for compassionate release or a reduced sentence. He adds that he suffers from obesity, hypertension, and a urinary tract infection. (Doc. No. 282, p. 2). Despite his health problems, he argues that he is ready to serve as his father's caregiver. Id.

Defendant has served approximately 220 months at FCI Gilmer. He has not received any disciplinary infractions during this time and has amounted over thirty-one months of credit for good conduct. While incarcerated, Defendant has taken courses in Anger Management, Spanish, and Parenting I. He has completed a drug treatment program. He is currently enrolled at Glenville State College where he is taking microeconomics, as well as first aid and safety. He also teaches Bible Study. (Doc. No. 282, pp. 3-4). If released, Defendant plans to reside with his father in his four-bedroom home during which time he plans to work as a chef until he can secure quality employment. Id. at p. 4. He asserts that his brother will provide transportation as needed. Id.

## II.     Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant has completed approximately sixty-one percent of his federal sentence for a violent crime and petitions this court for Compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking either a sentence reduction to time-served or to be released to home confinement. (Doc. No. 282, pp. 1, 7). Generally, federal courts "may not modify a term of imprisonment once it has been imposed." Dillon v. United States, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)). However, the Fourth Circuit has stated that "the Covid-19 pandemic has

3

understandably prompted an increasing number of inmates to file motions for compassionate release. . . .authoriz[ing] district courts to reduce terms of imprisonment upon finding 'extraordinary and compelling reasons.'" United States v. High, 997 F.3d 181, 185 (4th Cir. 2021). Section 3582(c)(1)(A) was amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, allowing defendants to seek such reductions "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such request." 18 U.S.C. §(c)(1)(A)(i).

Therefore, in order to grant compassionate release, this Court must: 1) determine whether extraordinary and compelling reasons warrant such a reduction; 2) determine whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and 3) consider the factors set forth in §3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 20220), United States v. McCoy, 981 F.3d 271, 280 (4th Cir. 2020), United States v. Kibble, 992 F.3d 326, 330 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021) (per curiam) (noting the district court's consideration of § 3553(a) factors should be "consistent with the applicable policy statements issued by the Sentencing Commission." (internal quotations omitted)). As the Sentencing Commission has lacked quorum since Congress enacted the First Step Act, and thereby has not updated U.S.S.G. § 1B1.13, the Guidelines "remain helpful guidance even when motions are filed by defendants."[1] McCoy, 981 F.3d at 282 n.7. Nonetheless, the Court should independently

---

[1] The Fourth Circuit has recognized that [by] its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)" because the policy statement was adopted prior to the passage of the First Step Act, which only provided guidance for BOP-filed motions. McCoy, 981 F.3d at 282.

4

determine whether extraordinary and compelling reasons warrant a sentence reduction following consideration of § 3553(a) sentencing factors "to the extent that they are applicable." Hargrove, 30 F.4th at 195; see also McCoy, 981 F.3d at 284 (stating that 'district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" (citing United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020); emphasis in the original)). In arriving at a decision in this matter, the Court need not acknowledge and address each of defendant's arguments, as there are instances where minimal explanation suffices." High, 997 F.3d at 189 (internal quotations omitted); see also Chavez-Meza v. United States, 138 S. Ct. 1959, 1965 (2018). The Court will examine each of these procedural steps in turn.

### A. Exhaustion of Administrative Remedies

The Government concedes Defendant made a request to the BOP for compassionate release, and it was subsequently denied. (Doc. No. 274, pp. 2-3). Therefore, the record clearly indicates Defendant exhausted his administrative remedies in compliance with § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Defendant attributes a series of his medical ailments, their relation to COVID, and his ailing father as extraordinary and compelling reasons to grant Compassionate Release. While 18 USC s. 3582(c)(1)(A)(i) fails to define what qualifies as extraordinary and compelling reasons, the Sentencing Commission provides persuasive guidance. USSG s. 1B1.13.[2] The Guidelines note

---

[2] The Guidelines delineate subdivision (2)— "the defendant is not a danger to the safety of any other person or to the community"— as a prerequisite for the Court imposing a sentence reduction based on the applicable policy statements and commentary. However, § 3582(c)(1)(A) only requires this dangerousness finding when making a determination pursuant to subsection (ii). Nonetheless, as McCoy instructs, the gap in revisions to the Guidelines following the enactment of the First Step Act "remains helpful guidance," however, they are not binding. 981 F.3d at 282 n.7; see also United States v. Gunn, F.3d 1178, 1180 (7th Cir. 2020) (stating "the Sentencing Commission's statements may inform a district court's discretion for compassionate release motions, but they are not binding.") (cleaned up).

5

various considerations that may justify a sentence reduction, including if Defendant is suffering from a serious medical condition, is at an advanced age, has certain family circumstances, and other reasons as determined by the Director of the BOP; however, "rehabilitation, by itself, is not an extraordinary and compelling reason for a reduction. U.S.S.G. § 1B1.13, application note 1; see also 28 U.S.C. § 994(t) (authorizing the Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction).

### a. Underlying health conditions and COVID-19

As an initial matter, Defendant admits he has been fully vaccinated. (Doc. No. 282, p. 3). However, he argues FCI Gilmore is unsafe and has systems in place constituting cruel and unusual punishment. (Doc. No. 267, p. 6) Defendant points to several COVID-19 outbreaks from the period between August 2021 and February 2022, where the prison responded by ordering inmates to lockdown in their cells. (Doc. No. 282, pp. 9-10.) Defendant argues FCI Gilmore has not adequately adhered to proper COVID-19 protocols by sometimes returning inmates to their cells without COVID screenings. Id. He further states that both vaccinated and unvaccinated individuals have caught COVID-19 and that he is at a higher risk of catching COVID-19 due to his medical conditions. Id.

The Fourth Circuit has held there is no bright line rule where conditions not listed at the CDC's highest risk category can never qualify as extraordinary and compelling reasons to reduce a sentence. Hargrove, 30 F.4th at 195. In Hargrove, the Fourth Circuit noted that compassionate release should balance the severity of the inmate's personal circumstances, and by applying a standard that requires inmates to prove 1) a particularized susceptibility to COVID-19, and 2) a particularized risk of contracting the disease at his prison facility. Id. 196-97.

6

### i. Particularized Susceptibility

Defendant provides the Court one medical record listing a series of his ailments including hypothyroidism, hyperlipidemia, an unspecified mental disorder, migraine, impacted cerumen, hypertension, varicose veins, ulcerative colitis, irritable bowel syndrome, hematuria, urinary tract infection, and edema. (Doc. No. 267-2). However, because Defendant's vaccination significantly mitigates the risk of contracting COVID-19, the risk of contracting the virus is insufficient, on its own, for Defendant to establish an "extraordinary and compelling" reason for compassionate release. See 18 U.S.C § 3582(c)(1)(A); see also United States v. Zywotko, 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("'General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release. . . .'") (quoting United States v. Eberhart, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

Defendant contends his medical conditions includes a problem with the main tube to his heart and notes he has undergone six colonoscopy procedures in which pieces of cancer were removed. He argues, however, that his medical needs at FCI Gilmore have not been adequately met. Based on his own statements, it appears the opposite is true. Additionally, Defendant does not advance any CDC data or evidence reflecting a connection between his medical conditions and his current increased vulnerability to the COVID-19 virus. As such, the Court concludes that Defendant's medical evidence fails to establish a particularized susceptibility to warrant release for extraordinary and compelling reasons. See Hargrove, 30 F.4th at 196 (holding that the district court did not abuse its discretion by finding the defendant failed to proffer sufficient

evidence that his current conditions *might* increase his risk of serious illness or death from COVID-19); see also United States v. Hood, No. 5:18-CR-00005-KDB, 2020 WL 2091070, at *3 (W.D.N.C. Apr. 30, 2020) ("Without a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility, the Court will not grant a motion for compassionate release based on COVID-19 concerns.").

### ii. Particularized Risk at FCI Gilmore

Defendant argues federal prisoners are dying in federal institutions across the country and the BOP cannot protect Defendant against the "Global Killer" COVID-19. He cites unusual lockdowns and a series of outbreaks and the story of one inmate who was rushed to the hospital for a COVID induced outbreak. Defendant points to procedures in place by the BOP that have been implemented to protect inmates and mitigate the spread of COVID-19. As last updated by the BOP (6/17/22), there are zero positive inmate and three staff cases of COVID-19, there has been one inmate death and a recovery of 295 inmates and 142 staff.[3] What is apparent from Defendant's filings is that prison staff have acted swiftly to remove, isolate, and minimize the spread of the virus. It is not this Court's role to micromanage the BOP's regulations as it relates to the **COVID**-19 virus. Turner v. Safley, 482 U.S. 78, 89 (1987) (holding that prison regulations will be upheld if they are "reasonably related to legitimate penological interests.").

Based on these reasons, the Court finds Defendant has failed to sufficiently establish that the combined impact of Defendant's underlying health conditions, the threat of the COVID-19

---

[3] https://www.bop.gov/coronavirus/ (visited 6/28/22)

8

pandemic, and the conditions of his confinement within the BOP system warrants a sentence reduction under § 3582(c)(1)(A)(i).[4]

### b. Ailing Father

As laid out by §3582(c)(1)(A)(i), the familial circumstances under which a prisoner may be granted compassionate release are as followed:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

Generally, compassionate release based on family circumstances has only been granted where a defendant is the sole available caregiver for his or her minor child or a closely related and incapacitated adult. See United States v. Landry, Crim. No. RCY-16-0171, 2021 WL 5493497, at *3 (E.D. Va. Nov. 22, 2021); see also United States v. Allen, Crim. No. NKM-13-0024, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021) (citing United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019)) ("Some courts have found extraordinary and compelling grounds for compassionate release if a defendant demonstrates that (1) a parent is incapacitated and (2) the defendant is the only possible caregiver for that parent.").

---

[4] See e.g., Kibble, 992 F.3d at 333-34 (Gregory, C.J., concurring) ("Here, Mr. Kibble identified three circumstances that, collectively, qualified as extraordinary and compelling: (1) the uncontrollable spread of COVID-19 at FCI Elkton. (2) his tricuspid atresia, and (3) his non-alcohol related cirrhosis of the liver. The district court agreed and so found. As the time of Mr. Kibble's motion, nearly 25% of Elkton's populations had contracted COVID-19; nine inmates had died as a result. The ACLU of Ohio and the Ohio Justice & Policy Center had named FCI Elkton as a defendant in class action suit challenging the facility's conditions of confinement during the pandemic. And, at the time of Mr. Kibble's motion, Elkton was subject to a preliminary injunction aimed at correcting the facility's mismanagement. See Wilson v. Williams, 455 F. Supp. 3d 467 (N.D. Ohio 2020), vacated by Wilson v. Williams, 961 F.3d 829, 833 (6th Cir. 2020). This combination of factors rightly gave rise to the extraordinary and compelling circumstances animating this case.") In contrast, Defendant here has failed to provide a sufficient combination of factors, supported by the record, to support a finding of extraordinary and compelling reasons.

Here, Defendant states that he is the only possible caregiver for his father because his brother is unable to care for him; however, Defendant also asserts that he is not at liberty to discuss with this Court why his brother is unable to care for their father. (Doc. No. 282, p. 4). Defendant recites a series of his father's medical conditions (disability due to a bad disc, early stages of dementia, kidney removal surgery that has led to difficulty in being able to walk, bathe, and feed himself, and a loss of hearing), id. at p. 2, but Defendant provides no medical records to back up his claims that his father is unable to care for himself or perform daily tasks for self-care. As stated, the father lives in a four-bedroom home by himself and has been disabled for a little over forty-seven years. Id.

The Court sympathizes with the ailing of Defendant's father. Ultimately, while it may be the case that Defendant's father has become increasingly ill, Defendant has not sufficiently established that 1) his father is incapacitated or 2) he is the only person available to provide him with care. Both must be done in order for this Court to conclude his familial circumstance rise to the level of extraordinary and compelling for compassionate release. For these reasons, the Court finds Defendant has not asserted any legitimate reason to grant compassionate release.

### C. 18 U.S.C. § 3553(a) Factors

Even if Defendant had established extraordinary and compelling reasons for sentence reduction, the Court must still consider the § 3553 factors in determining whether to grant Defendant's motion. In reconsidering all the § 3553(a) sentencing factors applicable here, the Court highlights a few, including the nature and circumstances of the offense and the history and characteristics of Defendant, as well as the need for the sentence to provide just punishment, afford adequate deterrence, provide Defendant with needed medical care, and protect the public. The

10

Case 3:04-cr-00191-FDW   Document 283   Filed 06/28/22   Page 10 of 11

Court first commends Mr. Burrough on his significant steps toward rehabilitation. However, this Court cannot reasonably grant compassionate release in consideration of § 3553(a) factors.

Defendant is a career criminal, and his criminal activity includes a long history spanning two decades of repeated convictions, including Voluntary Manslaughter— for which he served five years of a fifteen-year sentence— Conspiracy to Commit Robbery and Possession of a Firearm During and in Relation to a Crime of Violence, and Possession of a Firearm by a Convicted Felon. (Doc. No. 273, pp. 9-10). The crime for which Defendant is currently incarcerated occurred while on supervised release and less than two years following his release from custody for Conspiracy to Obstruct, Delay and Affect Interstate Commerce by Robbery. *Id.* at p. 11. None of his previous terms of imprisonment have served as a deterrent, and Defendant has shown his propensity to reoffend. The Court does not find Defendant's rehabilitative steps persuasive enough to overcome his specific history and characteristics. Therefore, even if Defendant had met his burden of proving extraordinary and compelling reasons warranting reduction, and that such a reduction was consistent with the applicable policy statements issued by the Sentencing Commission, the Court would *still* deny Defendant's motions after a complete review of the record, parties' arguments, and all relevant factors under 18 U.S.C. § 3553(a).

### D. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motions for Compassionate Release/Reduced Sentence (Doc. Nos. 267, 282) are DENIED.

IT IS SO ORDERED.

Signed: June 28, 2022

Frank D. Whitney
United States District Judge