UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:04-CR-00191-FDW

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| BRIAN KEITH BURROUGH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on several motions to reduce Defendant's Sentence, including motions and motions to supplement filed pro se, (Doc. Nos. 284, 289); motions to reconsider, extend time for appeal, and stay the Court's prior order denying previous motions to reduce his sentence, (Doc. Nos. 285, 286, 288); and a motion filed through counsel, (Doc. No. 294). On March 29, 2023, and prior to the filing of Document Number 294, counsel for Defendant entered an appearance and moved for an extension of time to file a counseled motion on behalf of Defendant, (Doc. No. 293). The Court granted that motion, and in so doing, the Court instructed counsel, "to file an Amended Motion for Reduction of Sentence incorporating all applicable arguments in support of the relief requested by Defendant." (Text only docket Order; March 29, 2003). Defense counsel subsequently filed an Amended Motion to Reduce Sentence Under § 404 of the First Step Act. (Doc. No. 294). In accordance with district practice, the United States Probation Office prepared a Supplemental Presentence Report pursuant to the First Step Act of 2018 (hereafter, "Supplemental First Step Act PSR"). (Doc. No. 297). This matter has been fully briefed, (Doc. Nos. 295, 299, 300), and is ripe for ruling.

In light of the Court's directive to counsel in filing the supplemental pleading, the Court concludes the Amended Motion incorporates all meritorious arguments advanced by Defendant in

1

his multiple pro se pleadings. Appropriately, it appears counsel abandoned the unmeritorious arguments, and the Court thus concludes the Supplemental Motion controls the Court's analysis today. To the extent the pro se motions raised arguments not contained in the Amended Motion, the Court finds those abandoned arguments frivolous or not compelling and therefore dismisses them. Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2404 (2022) ("[A] district court must generally consider the parties' nonfrivolous arguments before it. Of course, a district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation. . . . The First Step Act does not require courts to expressly rebut each argument made by the parties." (citations and quotations omitted). This includes those arguments seeking this Court's reconsideration of its prior ruling on compassionate release, which is not asserted, argued, or raised in the Amended Motion.

The Court has carefully considered the motions and the record, and for the reasons below, the Court DENIES the motions to reduce sentence, DENIES the motions for reconsideration, and DENIES AS MOOT the motion for extension of time and to stay the prior order denying compassionate release.

I. Background

For at least five months in 2003, Defendant participated in a drug-trafficking conspiracy that distributed heroin and crack cocaine. (Doc. No. 273). Between July and November 2003, Defendant regularly bought distribution-level quantities of crack cocaine from his co-conspirators, totaling at least 130 grams of crack cocaine. Id. In late October 2003, one of Defendant co-conspirators, Lawrence Williams, got into an argument with his heroin supplier because Williams owed $9,700 to his supplier, Jamie Covington. Id. Three days later, Covington and his "hit man,"

2

Aaron Howard, traveled from Raleigh, North Carolina, to Williams's mother's house in Charlotte, North Carolina, to collect his debt. Id. Defendant met Covington at Williams's mother's house and argued with Covington. Id. When Williams did not show up at his mother's house, Covington and Howard left in Covington's car. Id. Shortly thereafter, Covington hit a parked car. Id. As Covington and Howard were waiting on a tow truck, Defendant and Ronald Adams, another of Defendant's co-conspirators, pulled up behind Covington's car. Id. Defendant got out and shot Covington five times, killing him. Id. Howard ran, and Adams shot at Howard, hitting him in the back. Id.

After the shooting, Defendant and another co-conspirator went to Covington's Charlotte apartment and found $40,000. Id. Defendant later told the police that Williams had given Defendant a revolver and told Defendant to kill Covington because Williams was scared of what Covington would do if Williams did not pay his debt. Id.

At the time Defendant committed these offenses, he had previously been convicted of voluntary manslaughter and sentenced to 15 years in prison. Id. He was paroled four years later and discharged from that term of imprisonment in 1993. Id. Beginning in July 1994, Defendant committed a series of robberies, and in 1995, he was convicted in this Court of four counts of Hobbs Act robbery, eight counts of Hobbs Act conspiracy, possessing a firearm in furtherance of a crime of violence, and possessing a firearm as a convicted felon. The court sentenced Defendant to 120 months in prison. Id. Defendant completed his custodial sentence in June 2003 and began his term of supervised release. Id. He committed the instant offenses *that same year* and while under supervised release.

A federal grand jury indicted Defendant and charged him with conspiracy to possess with intent to distribute heroin and at least 50 grams of crack cocaine, 21 U.S.C. § 846; using a firearm

during and in relation to a drug-trafficking offense resulting in death, 18 U.S.C. § 924(c)(1), 924(j); and possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1). (Doc. No. 3). Two years after he was indicted, Defendant entered into a plea agreement with the United States, agreeing to plead guilty to the drug-trafficking and § 924(c) firearm offense. (Doc. No. 143). Defendant acknowledged in the plea agreement that he faced a statutory mandatory-minimum sentence of at least 10 years and a maximum of 40 years in prison for the drug-trafficking offense and consecutive mandatory sentence of at least 25 years in prison and a maximum sentence of life in prison or death for the § 924(c) firearm offense. The parties agreed, however, under Federal Rule of Criminal Procedure 11(c)(1)(C), that this Court should sentence Defendant to 30 years in prison. Id. Burrough also stipulated that his drug-trafficking offense involved at least 50 grams of crack cocaine.

This Court's probation office, cross referencing the murder guideline, began with a base offense level of 43. (Doc. No. 273). Applying a three-offense-level reduction for acceptance of responsibility and calculating a criminal-history category of VI, the probation office found that the Sentencing Guidelines advised a sentence of between 360 months and life in prison for the drug-trafficking offense. Id. As reflected in the parties' plea agreement, Defendant faced a statutory mandatory-minimum consecutive sentence of at least 25 years and a maximum of life in prison or death for the firearm offense. Id.

At sentencing, this Court accepted the parties' Rule 11(c)(1)(C) plea agreement and sentenced Defendant to 30 years in prison on each count, to be served concurrently. (Id., Doc. No. 205; Doc. No. 206).

In May 2020 and March 2022, Defendant asked this Court to grant him compassionate release. This Court denied his motion and renewed motion in June 2022, finding that Defendant

had not described any extraordinary and compelling reasons justifying his compassionate release. Doc. No. 283. This Court also found that even if Defendant had established extraordinary and compelling reasons for a sentence reduction, the sentencing considerations described in 18 U.S.C. § 3553(a) weighed against such a reduction. Id. This Court commended Defendant for his efforts toward rehabilitation but found that his "long history spanning two decades of repeated convictions" — from voluntary manslaughter to Hobbs Act and firearm offenses — and the failure of any previous prison sentences to deter him from further criminal misconduct weighed strongly against a sentence reduction, outweighing Burrough's "rehabilitative steps." (Id. p. 11).

During his time in the Bureau of Prisons, Defendant has not committed any disciplinary infractions, and he has completed 20 educational courses or work assignments, including obtaining his GED. (Doc. No. 297). Defendant is currently pursuing an associate's degree in business. Id.

Defendant, who is now 60 years old, has been in custody since August 31, 2004; has credited time of 268 months of his 320-month sentence; is currently scheduled to be released on July 12, 2029; and seeks a reduction in his sentence to time served. (Doc. No. 297).

## II. Sentence Reduction Pursuant to Section 404 of the First Step Act

Defendant seeks relief pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which made the Fair Sentencing Act of 2010, Pub. L. No. 111-220, retroactive. The Fair Sentencing Act described itself as intended "[t]o restore fairness to Federal cocaine sentencing." Id., 124 Stat. at 2372. In Section 2, labeled "Cocaine Sentencing Disparity Reduction," the Fair Sentencing Act increased the quantities applicable to cocaine base to 280 grams for the ten-year mandatory minimum and to 28 grams for the five-year mandatory minimum. Id. § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). In Section 3, the Fair Sentencing

Act eliminated the mandatory minimum sentence for "simple possession" of cocaine base. Fair Sentencing Act § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

With its enactment in 2018, Section 404 of the First Step Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010 and allows the court that imposed a sentence for a covered offense to exercise its discretion to impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed. Id. The Fourth Circuit has explained the impact:

> [B]efore the Fair Sentencing Act, crack cocaine trafficking offenses fell into three brackets: (1) offenses involving 50 or more grams, which were punished by 10 years to life in prison, see 21 U.S.C. § 841(b)(1)(A)(iii) (2006); (2) offenses involving between 5 and 50 grams, which were punished by 5 to 40 years in prison, see 21 U.S.C. § 841(b)(1)(B)(iii) (2006); and (3) offenses involving less than 5 grams (or an unspecified amount), which were punished by 0 to 20 years in prison, see 21 U.S.C. § 841(b)(1)(C) (2006). The Fair Sentencing Act's amendments to Subsections 841(b)(1)(A)(iii) and (B)(iii) shifted all three brackets upward, so that now (1) offenses involving 280 or more grams are punished by 10 years to life in prison, see 21 U.S.C. § 841(b)(1)(A)(iii) (2018); (2) offenses involving between 28 and 280 grams are punished by 5 to 40 years in prison, see 21 U.S.C. § 841(b)(1)(B)(iii) (2018); and (3) offenses involving less than 28 grams (or an unspecified amount) are punished by 0 to 20 years in prison, see 21 U.S.C. § 841(b)(1)(C) (2018).

United States v. Woodson, 962 F.3d 812, 815 (4th Cir. 2020).

**A. Standard of Review**

The Supreme Court's decision in Concepcion explained the applicable standard to review Defendant's motion made pursuant to Section 404 of the First Step Act, and the Fourth Circuit recently explained the two-step process:

> [D]istrict courts exercising their discretion under the First Step Act to proceed in two steps. First, they must recalculate the movant's Guidelines range "only to the extent it adjusts for the Fair Sentencing Act." United States v. Shields, 48 F.4th 183, 192 (3d Cir. 2022); see also Concepcion, 142 S. Ct. at 2402 n.6, 2403 n.8. Second, they may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence. Concepcion, 142 S. Ct. at 2396, 2402 n.6.

> Thus, while a district court may consider other changes in the law when determining what reduction, if any, is appropriate in an individual case, the proper "benchmark" for the district court's analysis (and for our review) is the impact of the Fair Sentencing Act on the defendant's Guidelines range. Id. at 2402 & n.6.

United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023) (also noting that the Fourth Circuit's prior case law instructing district courts to recalculate a movant's Guidelines range based on "intervening case law" unrelated to the Fair Sentencing Act did not survive Concepcion). In the second step of considering the nonfrivolous arguments raised by the parties, including intervening changes in the law, "district courts deciding First Step Act motions regularly have considered evidence of postsentencing rehabilitation and unrelated Guidelines amendments when raised by the parties." Concepcion, 142 S. Ct. at 2402–03. Notwithstanding these considerations, the Supreme Court has stated, "the First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison counsels against providing relief." Id. at 2404–05. Bearing these principles in mind, the Court turns to Defendant's arguments.

**B. Analysis**

Relying on Section 404 of the First Step Act, Defendant asks this Court to reduce his sentence from 360 months to time served, which is approximately 268 months. Here, the parties agree Defendant's conviction for conspiracy to possess with intent to distribute cocaine base qualifies for a sentence reduction under the First Step Act. See First Step Act § 404(a), 132 Stat. at 5222; see also Lancaster, 997 F.3d at 174 (4th Cir. 2021) ("We have concluded that a "covered offense" includes violations under 21 U.S.C. §§ 841(b)(1)(A)(iii), (b)(1)(B)(iii), and (b)(1)(C)." (Citations omitted)).

Having determined Defendant qualifies for a reduction, the Court recalculates Defendant's Guidelines range as if the Fair Sentencing Act applied at the time of his offense. Concepcion, 142 S. Ct. at 2402 (noting "the 'as if' clause requires a district court to apply the Fair Sentencing Act as if it applied at the time of the commission of the offense, not at the time of the original sentencing."). Here, the parties agree Defendant's Guideline Range for the drug conspiracy remains *unchanged* at 360 months to life months based on a total offense level 40 (pursuant to a cross-reference to First Degree Murder (USSG §2A1.1)), and a criminal history of VI. (Doc. No. 297).

Using the recalculated the guidelines range as a benchmark, the Court considers whether a reduction in the term of imprisonment is warranted in light consideration of the applicable § 3553(a) factors,[1] as well as intervening changes in law, unrelated Guidelines amendments, and evidence of postsentencing rehabilitation. See Concepcion, __ U.S.__, 142 S. Ct. at 2402 n.6 (the "Guidelines range 'anchor[s]' the sentencing proceeding . . . . The district court may then consider postsentencing conduct or nonretroactive changes . . . with the properly calculated Guidelines range as the benchmark."); Chavez-Meza v. United States, __ U.S. __, 138 S. Ct. 1959, 201 L.Ed.2d 359 (2018) (explaining obligations of district judge in addressing sentence-modification motion under 18 U.S.C. § 3582(c)(2)); United States v. Martin, 916 F.3d 389 (4th Cir. 2019) (applying Chavez-Meza and explaining obligation of district judge to consider post-sentencing mitigation evidence and provide rationale in addressing § 3582(c)(2) sentence-modification motion).

---

[1] In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the Court considers "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" "the need to avoid unwarranted sentence disparities;" and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

Turning to consideration of the applicable § 3553(a) factors, Defendant's criminal history is extraordinary and contains a record of violent criminal conduct and recidivism. He was sentenced to 15 years in prison for manslaughter, and not long after his release from that sentence, he engaged in numerous Hobbs Act robberies, resulting in a 120-month federal sentence. Almost as soon as he was released from that custodial sentence and while on supervised release, Defendant began trafficking in crack cocaine, and less than six months later, committed murder. Pursuant to a negotiated plea agreement, Defendant pled guilty to the instant offenses, which at the time carried a mandatory minimum of 10 years up to life for Count 1 and a mandatory sentence of 25 years consecutive and up to a sentence of death for Count 2. (Doc. No. 273). As a result of his plea agreement and pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to recommend—and the Court accepted—a sentence of 360 months. (Doc. Nos. 143, 273). In entering into the plea agreement, the Government provided significant consideration for Defendant's plea, including the dismissal of the serious charge under § 922(g) and a recommended sentence at the very low end of the Guidelines range despite being subject to a minimum sentence of 35 years and a sentence up to life imprisonment or death.

The Court also considers Defendant's arguments concerning his age and "empirical data concerning how the aging process relates to recidivism" provided in his brief, (Doc. No. 294), yet finds this information insufficient under this record to support a sentence reduction to time served. In so concluding, the Court also notes the sentencing judge's analysis at the original sentencing remains applicable here. See United States v. Robinson, No. 1:07-CR-00032-MR-4, 2021 WL 3726744, at *9 (W.D.N.C. Aug. 23, 2021) ("The Defendant's offense conduct and criminal history have not changed, nor have the Defendant's other pre-offense history and characteristics or the circumstance surrounding his criminal activities. All that has changed is that the Defendant has

exhibited some rehabilitation, the adoption of the Fair Sentencing Act has embraced a view that crack cocaine offenses should be treated with a little bit more leniency, and the First Step Act has allowed the Defendant a re-examination of his sentence."). During sentencing, the Government recommended the Court accept the parties' negotiated 11(c)(1)(C) plea agreement recommended sentence of 30 years because, "Thirty years is a very long sentence, especially for someone of his age. He deserves that sentence." (Doc. No. 257, p. 12). In considering this argument and imposing a sentence of 30 years—as opposed to a longer sentence—the Court already considered the impact of Defendant's age and its impact on the time he should serve in prison. A sentence of time served as this juncture equates to a sentence of 19 years—or less than two-thirds of the sentence as imposed pursuant to a favorable plea agreement. That reduction in sentence it is not warranted under this record, notwithstanding Defendant's age and data on aging and recidivism.

As the Court has already recognized, Defendant's post-sentencing rehabilitation is commendable, including the lack of any disciplinary infractions while in custody and the letters of support submitted by his fellow inmates, (Doc. No. 300). The Court specifically commends Defendant for his educational achievements, including his work towards his Associates Degree and for completing drug-abuse treatment. These accomplishments will serve him well upon release. The Court also commends Defendant for not receiving any disciplinary infractions while incarcerated and for serving as a model for those incarcerated alongside him. 28 U.S.C. § 994(t) (emphasis added). Defendant's clear disciplinary record over the past 19 years suggests he has improved his respect for the law; however, "a defendant's compliance with prison rules is a minimum expectation of incarceration, not an extraordinary circumstance." United States v. Artis, No. 3:13-CR-218-MOC-DSC-1, 2023 WL 2469029, at *4 (W.D.N.C. Mar. 10, 2023). Furthermore, Congress has made clear that "rehabilitation of the defendant alone shall not be

considered an extraordinary and compelling reason" for a modification under section 18 U.S.C. § 3582(c)(1)(A). The Court concludes Defendant's rehabilitation efforts—while remarkable—fail to justify a sentence of time served under this record in consideration alongside the § 3553(a) factors addressed above.

In evaluating the appropriateness of a reduction, the Court also considers Defendant's medical conditions and health concerns, which he describes as "demonizing, harsh, and very brutal," particularly within the confines of incarceration. (Doc. No. 299-1). Defendant contends he is not receiving adequate medical care and that the BOP has failed to accommodate his conditions by providing opportunities to clean and sanitize himself and his belongings after he has experienced symptoms of his conditions. The Court has reviewed Defendant's narration and summation of his diagnosis and symptoms; and the Court sympathizes with the difficulties and challenges Defendant articulates as being caused by his medical conditions. The record before the Court, however, fails to indicate Defendant is not receiving adequate medical care at his current place of incarceration, and in so concluding, the Court incorporates by reference its prior analysis concerning Defendant's medical conditions in the Order previously denying his motions for compassionate release. (Doc. No. 283). Accordingly, Defendant's asserted health conditions do not support a sentence reduction to time served based on the current record before the Court.

The Court finds that the balancing of § 3553(a) factors, when considered for this Defendant under this record and including his strong post-sentencing rehabilitation, counsel that a sentence reduction to time served is not appropriate here. The record in this case, need to reflect the seriousness of the offense, need to provide just punishment, need for adequate deterrence, and need to protect the public outweigh Defendant's positive and meaningful rehabilitation efforts and counsel against a sentence of time served.

### III. Conclusion

In sum, the Court remains troubled by the serious nature of Defendant's offense conduct and violent criminal history, and consideration of the § 3553(a) factors militate against Defendant's immediate release. Here, absent the plea agreement with an agreed 30-year sentence, Defendant faced a life sentence, or more, for his involvement in drug trafficking and the murder committed in furtherance of the drug crime. For the reasons above, the Court DENIES Defendant's Amended Motion to Reduce Sentence and concludes the sentence of 360 months as imposed is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

**IT IS, THEREFORE, ORDERED** that the Court DENIES Defendant's Motions to Reduce Sentence, (Doc. Nos. 284, 289, 294).

**IT IS FURTHER ORDERED** that Defendant's Motion to Reconsider, (Doc. No. 286), is DENIED; and Defendant's Motions for Extension of Time and to Stay, (Doc. Nos. 285, 288), are DENIED AS MOOT in light of the Court's ruling herein denying his motion to reconsider.

**IT IS SO ORDERED.**

Signed: July 13, 2023

_____
Frank D. Whitney
United States District Judge